UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NICHOLE NICHOLS,<br><br>                              Plaintiff,<br><br>v.<br><br>ANDREW SAUL,<br><br>                              Defendant. | Case No.:  19cv490-BEN-LL<br><br>**REPORT AND RECOMMENDATION RE: CROSS-MOTIONS FOR SUMMARY JUDGMENT**<br><br>**[ECF Nos. 11, 12]** |

Plaintiff Nichole Nichols brings this action for judicial review of the Social Security Commissioner's ("Commissioner's") denial of her claim for disability insurance benefits. ECF No. 1. Before the Court are Plaintiff's Motion for Summary Judgment [ECF No. 11 ("Pl.'s Mot.")], Defendant's Cross-Motion for Summary Judgment and Opposition to Plaintiff's Motion [ECF No. 12 ("Def.'s Mot.")], Plaintiff's Reply in Support of Motion for Summary Judgment [ECF No. 17 ("Pl.'s Reply")] and Defendant's Reply in Support of Motion for Summary Judgment [ECF No. 18 ("Def.'s Reply")].

This Report and Recommendation is submitted to United States District Judge Roger T. Benitez pursuant to 28 U.S.C. § 636(b) and Civil Local Rule 72.1(c) of the United States District Court for the Southern District of California. For the reasons set forth below, the Court **RECOMMENDS** that Plaintiff's Motion for Summary Judgment be **GRANTED**

1

and Defendant's Cross-Motion for Summary Judgment be **DENIED**.

## PROCEDURAL BACKGROUND

On May 11, 2015, Plaintiff filed a Title II application for disability insurance benefits, alleging disability beginning September 5, 2012. Administrative Record ("AR") at 16, 230-31. On November 16, 2015, Plaintiff's claims were denied by initial determination. Id. at 163-68. On December 8, 2015, Plaintiff requested reconsideration. Id. at 169. On March 10, 2016, Plaintiff's application was again denied upon reconsideration. Id. at 16, 170-75. On March 22, 2016, Plaintiff thereafter filed a written request for a hearing. Id. at 16, 176-77.

On November 28, 2017, a hearing was held before Administrative Law Judge ("ALJ") Roger E. Winkelman. Id. at 16, 83-131. On February 23, 2018, the ALJ issued a written decision in which he determined that Plaintiff had not been under a disability, as defined in the Social Security Act, from September 5, 2012 through December 31, 2017 (date of last insured). Id. at 16-26.

Plaintiff requested review of the ALJ's decision by the Appeals Council. Id. at 1, 228. In a letter dated February 12, 2019, the Appeals Council found no basis for changing the ALJ's ruling. Id. at 1-4. The ALJ's decision thereafter became the Commissioner's final decision.

On March 14, 2019, Plaintiff filed the instant action seeking judicial review by the federal district court. ECF No. 1. On July 30, 2019, Plaintiff filed a motion for summary judgment. ECF No. 11. On August 16, 2019, Defendant filed a cross-motion for summary judgment. ECF No. 12. On September 12, 2019, Plaintiff filed a reply. ECF No. 17. On September 18, 2019, Defendant filed a reply. ECF No. 18.

## SUMMARY OF THE ALJ'S FINDINGS

The ALJ followed the Commissioner's five-step sequential evaluation process in his written decision. See 20 C.F.R. §§ 404.1520, 416.920. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity from Plaintiff's alleged onset date of September 5, 2012 through December 31, 2017. AR at 18.

2

At step two, the ALJ found that Plaintiff had the following severe impairment: degenerative disc disease. Id. In contrast, the ALJ found that Plaintiff's medically determinable mental impairment of affective disorder did not cause more than a minimal limitation in Plaintiff's ability to perform basic mental work activities and was therefore not severe. Id. at 18-19.

At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the impairments listed in the Commissioner's Listing of Impairments. Id. at 19.

In his RFC assessment, the ALJ found Plaintiff did have residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except for occasional balancing, crouching, crawling, climbing ramp/stairs, kneeling and stooping, never climbing ladders/ropes/scaffolds, and the need to avoid concentrated exposure to bright light. Id. at 25.

At step four, the ALJ found that Plaintiff was capable of performing her past relevant work as a "collection clerk" and "credit and loan supervisor . . . as actually and generally performed." Id. at 25-26.

## STANDARD OF REVIEW

Section 405(g) of the Social Security Act permits unsuccessful applicants to seek judicial review of the Commissioner's final decision. 42 U.S.C. § 405(g). The scope of judicial review is limited. A denial of benefits will not be disturbed if it is supported by substantial evidence and contains no legal error. Id.; see also Trevizo v. Berryhill, 871 F.3d 664, 674 (9th Cir. 2017) (citing Benton ex rel. Benton v. Barnhart, 331 F.3d 1030, 1035 (9th Cir. 2003)).

"Substantial evidence is more than a mere scintilla, but may be less than a preponderance." Lewis v. Apfel, 236 F.3d 503, 509 (9th Cir. 2001) (citation omitted). It is "relevant evidence that, considering the entire record, a reasonable person might accept as adequate to support a conclusion." Id. (citation omitted). "In determining whether the [ALJ's] findings are supported by substantial evidence, [the court] must review the

3

administrative record as a whole, weighing both the evidence that supports and the evidence that detracts from the [ALJ's] conclusion." <u>Reddick v. Chater</u>, 157 F.3d 715, 720 (9th Cir. 1998) (citations omitted). "Where evidence is susceptible to more than one rational interpretation, the ALJ's decision should be upheld." <u>Trevizo</u>, 871 F.3d at 674-75 (quoting <u>Orn v. Astrue</u>, 495 F.3d 625, 630 (9th Cir. 2007)). This includes deferring to the ALJ's consistency determinations and resolutions of evidentiary conflicts. <u>See</u> <u>Lewis</u>, 236 F.3d at 509. A court reviews "only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which he did not rely." <u>Garrison v. Colvin</u>, 759 F.3d 995, 1010 (9th Cir. 2014) (citation omitted).

Section 405(g) permits a court to enter judgment affirming, modifying, or reversing the Commissioner's decision. 42 U.S.C. § 405(g). The reviewing court may also remand the matter to the Social Security Administration for further proceedings. <u>Id.</u>

## **ANALYSIS**

Plaintiff challenges the ALJ's adverse decision on two grounds. First, Plaintiff contends that the ALJ did not articulate specific and legitimate reasons for giving "no weight" to her treating physician Dr. Elizabeth Pendragon's opinion. Pl.'s Mot. at 3-10. Second, Plaintiff contends that the ALJ did not articulate specific and legitimate reasons for rejecting her examining psychologist Dr. Kara Cross's opinion. <u>Id.</u> at 10-12.

The Court addresses the ALJ's treatment of each doctor's opinion below.

## I. **Opinions of Treating and Examining Physicians**

Where the record contains medical evidence conflicting with a treating or examining physician's opinion, "the ALJ is charged with determining credibility and resolving the conflict." <u>Benton v. Barnhart</u>, 331 F.3d 1030, 1040 (9th Cir. 2003). The opinion of a treating doctor generally should be given more weight than opinions of doctors who do not treat the claimant. <u>See</u> <u>Turner v. Comm'r. of Soc. Sec.</u>, 613 F. 3d 1217, 1222 (9th Cir. 2010) (citing <u>Lester v. Chater</u>, 81 F.3d 821, 830-31 (9th Cir. 1995)).

If the treating doctor's opinion is not contradicted by another doctor, it may be rejected only for "clear and convincing" reasons supported by substantial evidence in the

4

record. Id. (citing Lester, 81 F.3d at 830-31). Even when the treating doctor's opinion is contradicted by the opinion of another doctor, the ALJ may properly reject the treating doctor's opinion only by providing "specific and legitimate reasons" for doing so. Id. (citing Lester, 81 F.3d at 830-31). This can be done by "setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating [the ALJ's] interpretation thereof, and making findings." Tommasetti v. Astrue, 533 F.3d 1035, 1041 (9th Cir. 2008) (citing Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989). "The ALJ must do more than offer his conclusions. He must set forth his own interpretations and explain why they, rather than the doctors', are correct." Orn, 495 F.3d at 632 (quoting Embrey v. Bowen, 849 F.2d 418, 421-22 (9th Cir. 1988)).

## II.   The ALJ's Treatment Of Dr. Pendragon's Opinion

As an initial matter, the record contains multiple indicia of Plaintiff's treatment relationship with Dr. Pendragon. See AR at 430-435 (June 23, 2015), 438-444 (May 26, 2015), 454-459 (April 21, 2015), 476-486 (March 17, 2015), 509-515 (February 24, 2015), 527-532 (February 4, 2015), 535-542 (January 14, 2015), 546-551 (December 11, 2014), 552-555 (November 21, 2014), and 759-765 (July 21, 2015).

Dr. Pendragon found in her physical examinations that Plaintiff's lumbosacral spine exhibited tenderness on palpation, muscle spasms and pain elicited by motion. Id. at 432, 456, 478, 511, 529, 537, 761. Dr. Pendragon diagnosed Plaintiff with lumbar spondylosis, lumbar radiculopathy, and lumbago with sciatica. Id. at 433, 441, 480, 512-513, 530.

In Dr. Pendragon's January 14, 2015 report, Dr. Pendragon cited MRI results: (1) indicating a "[s]mall right S2 perineural cyst, of uncertain clinical significance" with an "[o]therwise negative examination"; and (2) an assessment of "single level disc disease L4\L5 with possible exiting nerve root contact on the left." Id. at 538, 540. In her May 26, 2015 report, Dr. Pendragon indicated she considered Plaintiff "totally disabled" with "no prolonged sitting" and "lifting restrictions." Id. at 441.

In her July 21, 2015 "Medical Opinion Re: Ability To Do Physical Activities," Dr. Pendragon opined Plaintiff could only continuously sit for an hour and continuously stand

5

for thirty minutes at a time. Id. at 632. Dr. Pendragon further opined that Plaintiff could sit, stand, and walk for less than two hours in an eight hour work day. Id. Dr. Pendragon opined that Plaintiff required a job which permitted shifting positions at will and Plaintiff would also need to take unscheduled breaks—about four times a day ranging from fifteen to thirty-minutes in duration—during an eight-hour work day. Id. at 632, 634.

Dr. Pendragon opined that with prolonged sitting, Plaintiff legs should be elevated at knee level, and that if Plaintiff had a sedentary job, her legs should be elevated 100% of the time during an eight hour work day. Id. at 634. Dr. Pendragon opined Plaintiff could occasionally lift objects ten pounds or lighter, but nothing heavier than twenty pounds. Id. Dr. Pendragon further opined that Plaintiff could never perform the following postural activities: twist, stoop (bend), crouch, climb ladders and could only occasionally climb stairs. Id. at 633. Dr. Pendragon also opined Plaintiff could not spend any percentage of an eight hour work day either bending or twisting at the waist. Id. at 634.

Dr. Pendragon further opined that Plaintiff could: (1) use her right and left hands to grasp, turn, and twist objects 75%-100% of the time; (2) use her fingers to perform fine manipulations 75%-100% of the time; and (3) use her arms to reach 10% of the time during an eight hour work day. Id.

In his written decision, the ALJ held:

> No weight is given to the medical opinion of Dr. Pendragon who reported the claimant was limited to significantly less than the full range of sedentary work, with extreme limitations including the need to elevate the lower extremities 100% of the time, with preclusion from twisting or bending, as the claimant's acknowledged activities of daily living demonstrate significantly greater ability in her self-report (Exhibit 4E) and her statements to Dr. Cross (Exhibit 6F). This opinion appears to be a sympathetic rather than objective opinion as underlying documentation fails to support the limitations assessed. No other examining or treating source indicates such limitations.

Id. at 25.

///

### a.    **Inconsistency With Daily Activities**

The ALJ first rejected Dr. Pendragon's opinion because it was purportedly inconsistent with Plaintiff's daily activities as set forth in: (1) Plaintiff's statements to Dr. Kara Cross; and (2) Plaintiff's function report. Id. at 25.

Specifically, the ALJ noted Dr. Cross's report stated:

> On a daily basis, the claimant stated she is able to bathe, dress, pick up after herself, sweep, vacuum, fold laundry, cook, use a microwave, watch TV, listen to the radio, use a cellphone, use a smartphone, use a landline phone, use a computer, go on the internet, surf the web, go on YouTube, use Facebook, read, and call friends.

Id. at 21.

The ALJ further noted Plaintiff reported that: "[s]he drove her daughter to and from school daily, drove to daycare and the park, and fed the pet(s) with walks 3-4 times a day." Id. at 24.

Plaintiff argues that the ALJ "failed to point out which activities in [Plaintiff's] function report or Dr. Cross' report [] undercuts Dr. Pendragon's opinions regarding twisting and bending in a competitive work situation." Pl.'s Mot. at 6. Specifically, Plaintiff argues none of the daily activities identified in Dr. Cross's report or Plaintiff's function report "inherently requires twisting or bending" and Plaintiff's ability to engage in these activities is not inconsistent with Dr. Pendragon's opinion. Id. at 6-7. Further, Plaintiff argues "the ability to engage in such activities does not automatically translate to the ability to perform such activities in a rigid work environment." Id. at 7.

In Response, Defendant argues that "the ALJ reasonably concluded that Plaintiff's activities required a functional capacity greater than Dr. Pendragon opined she had." Def.'s Mot. at 14. Specifically, Defendant argues that the ALJ "noted inconsistencies with Plaintiff's activities and all of the extreme limitations in Dr. Pendragon's opinion" that restricted Plaintiff to "significantly less than the full range of sedentary work" and "not simply a preclusion against twisting or bending[.]" Id. at 8. Defendant further argues

7

Plaintiff does not dispute "she can and does perform" these daily activities and "a reasonable person could conclude, as the ALJ did, that such activities are inconsistent with Dr. Pendragon's opinions, which precluded Plaintiff from <u>all</u> twisting, bending, or crouching and limited her to reaching in any direction for 10% of a workday[.]" <u>Id.</u> at 10 (emphasis in original).

An inconsistency between a treating physician's opinion and a plaintiff's daily activities "may justify rejecting a treating provider's opinion." <u>Ghanim v. Colvin</u>, 763 F.3d 1154, 1162 (9th Cir. 2014). However, an ALJ must do more than simply identify that an inconsistency exists; the ALJ "must develop the record with specific detail in demonstrating <u>how</u> the daily activities are inconsistent with the physician's opinion." <u>Kovach v. Berryhill</u>, No. 3:18-cv-01848-GPC-BLM, 2019 U.S. Dist. LEXIS 169370, at *29 (S.D. Cal. Sep. 30, 2019) (emphasis added) (citing <u>Trevizo</u>, 871 F.3d at 676).

In this case, the Court finds the ALJ's opinion fails to adequately explain how Plaintiff's daily activities conflict with Dr. Pendragon's opinion. While the ALJ's opinion identifies a wide range of Plaintiff's daily activities that <u>could</u> indicate that Plaintiff was not as limited as Dr. Pendragon assessed, the ALJ failed to identify <u>which</u> of these activities the ALJ believed were inconsistent with Dr. Pendragon's opinion. The ALJ also failed to explain <u>how</u> any of these daily activities (e.g., bathing, dressing, household chores, using a microwave, using a phone, reading, feeding pets, driving, etc.) were inconsistent with Dr. Pendragon's opinion beyond a conclusory statement that the activities demonstrated "significantly greater ability" than Dr. Pendragon's assessments. AR at 25.

As such, the Court is left to speculate as to the ALJ's reasoning. <u>Trevizo</u>, 871 F.3d at 676 (ALJ erred in failing to develop a record regarding the extent and frequency of claimant's childcare responsibilities—absent "specific details" these tasks did not constitute "substantial evidence" inconsistent with physician's informed opinion); <u>see</u> <u>Carl S. v. Berryhill</u>, No. 5:17-cv-02308-GJS, 2019 U.S. Dist. LEXIS 18648, at *18-19 (C.D. Cal. Feb. 5, 2019) ("It is the ALJ's responsibility to further develop the record with regards to Plaintiff's daily activities if the ALJ suspects these may undermine the

8

treating physician's opinion.").

In addition, it is not clear whether the ALJ properly accounted for the entirety of Plaintiff's statements in her function report. See Revels v. Berryhill, 874 F.3d 648, 664 (9th Cir. 2017) (ALJ erred in omitting a claimant's "highly relevant qualifications" to his statements of daily activity). Specifically, the Court notes Plaintiff stated in her function report that her general level of daily activity was dependent on how much pain she was in and the amount of sleep she had had. AR at 283. Although Plaintiff reported being able to do chores, she qualified this as a single chore a day and only if it could be done quickly. Id. at 284. Plaintiff reported being able to prepare meals, but only if it took about five-to-ten minutes to do so. Id. She reported being able to shop, but only once a week and only if the trip lasted for less than an hour. Id. at 285. She indicated that she needed assistance dressing, often had to skip bathing, and found shaving nearly impossible. Id. at 283. The ALJ provided no explanation for how these limited activities are inconsistent with Dr. Pendragon's medical opinion.

It is also not clear whether the ALJ properly considered the transferability of Plaintiff's daily activities to a workplace environment. As the Ninth Circuit has held, the demands of daily living and of a competitive work environment are not facially analogous. Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989) ("The Social Security Act does not require that claimants be utterly incapacitated to be eligible for benefits . . . and many home activities are not easily transferable to what may be the more grueling environment of the workplace, where it might be impossible to periodically rest or take medication."); see Guzman v. Berryhill, 356 F. Supp. 3d 1025, 1039 (S.D. Cal. 2018) (finding ALJ erred by not explaining how daily activities would have no more than a minimal impact on [claimant's] ability to work); Godow v. Comm'r of SSA, No. CV 17-08160-PCT-MHB, 2018 U.S. Dist. LEXIS 171052, at *14 (D. Ariz. Sep. 28, 2018) ("The ALJ must point to specific inconsistencies between Plaintiff's daily activities and [the physician]'s opinions, and even if such inconsistencies exist, the ALJ must show Plaintiff's daily activities can transfer to the workplace.").

9

### b. **"Sympathetic" Opinion Inconsistent With Underlying Medical Evidence**

The ALJ also rejected Dr. Pendragon's opinion on the basis that:

> This opinion appears to be a sympathetic rather than objective opinion as underlying documentation fails to support the limitations assessed. No other examining or treating source indicates such limitations.

AR at 21.

Plaintiff argues the meaning of the ALJ's statement that "Dr Pendragon's opinion appears to be sympathetic rather than being supported by the objective evidence" is "not clear" and therefore "invalid." Pl.'s Mot. at 8. Specifically, Plaintiff argues there is no evidence Dr. Pendragon took Plaintiff's self-reports "at face value" and Dr. Pendragon "should not be faulted for believing Plaintiff's complaints." Id. at 9. In addition, Plaintiff argues that the absence of any opinion by another examining or treating source supporting Dr. Pendragon's opinion "is to be expected because the primary function of medical records is . . . not to provide evidence of disability determinations." Id. at 9-10.

Defendant argues it is "quite clear" what the "ALJ meant in stating that Dr. Pendragon's opinions appear to be more sympathetic than objective[.]" Def.'s Mot. at 11. Defendant argues the ALJ "continued by explaining that underlying documentation failed to support Dr. Pendragon's assessments" and that the "ALJ referenced objective evidence throughout the decision that contradicted Dr. Pendragon's extreme assessment[.]" Id. Defendant further argues Plaintiff has "waived any challenge to the accuracy of the ALJ's evaluation of evidence" by failing to challenge this evaluation in her motion. Id.

The inconsistency between a treating physician's opinion and medical evidence in the record can be a specific, legitimate reason to discount a treating physician's opinion. See Tommasetti, 533 F.3d at 1041 ("The incongruity between [the treating physician's] Questionnaire responses and her medical records provides an additional specific and legitimate reason for rejecting [the treating physician's] opinion of [the claimant's] limitations."); Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001) ("When

10

confronted with conflicting medical opinions, an ALJ need not accept a treating physician's opinion that is conclusory and brief and unsupported by clinical findings.").

However, to discredit a treating physician's opinion, the ALJ "must identify the specific notes establishing the inconsistency and set forth particularized reasons why [the ALJ's] interpretations are more correct than the treating doctor's." Kovach, 2019 U.S. Dist. LEXIS 169370, at *22 (citing Stewart v. Colvin, 575 F. App'x 775, 777 (9th Cir. 2014)).

In this case, although the ALJ provided a summary of Plaintiff's medical record (AR at 20-25), the ALJ did not identify the specific medical evidence the ALJ found inconsistent with Dr. Pendragon's opinions or explain how this evidence was inconsistent. As such, the Court has no method of determining how the ALJ arrived at his conclusion—the ALJ's statement (without any citations to the record) that the "underlying documentation" failed to support Dr. Pendragon's opinion is not enough. McAllister v. Sullivan, 888 F.2d 599, 602 (9th Cir. 1989) (ALJ erred in giving "broad and vague" reasons for rejecting a treating physician's opinion and "failing to specify why the ALJ felt the treating physician's opinion was flawed."); Embrey v. Bowen, 849 F.2d 418, 421 (9th Cir. 1988) ("To say that medical opinions are not supported by sufficient objective findings or are contrary to the preponderant conclusions mandated by the objective findings does not achieve the level of specificity our prior cases have required, even when the objective factors are listed seriatim."); see also Cline v. Colvin, No. 3:15-CV-05395-RBL-DWC, 2016 U.S. Dist. LEXIS 36375, at *8 (W.D. Wash. Feb. 26, 2016) (ALJ could not simply reject examining physician's opinion "simply because no other doctor in the record expressed the same limitation."); Curiel v. Colvin, No. ED CV 13-1412-PJW, 2014 U.S. Dist. LEXIS 142248, at *7 (C.D. Cal. Oct. 3, 2014) ("The ALJ's summary conclusion leaves the Court without a roadmap as to what he was referring to when he determined that the objective medical evidence did not support the doctor's opinion."); Davidson v. Astrue, No. 3:10-cv-6284-HZ, 2011 U.S. Dist. LEXIS 110528, at *20-21 (D. Or. Sep. 26, 2011) ("Simply stating that the opinion is not consistent with the totality of the evidence is nothing more than offering an unsupported conclusion without discussion of or citation to the specific reasons and

11

parts of the record that the ALJ found to be inconsistent."); Smith v. Astrue, No. ED CV 10-633-PLA, 2011 U.S. Dist. LEXIS 101057, at \*17 (C.D. Cal. Sep. 8, 2011) (finding an ALJ's "conclusory assertion" that a treating physician's opinion was inconsistent with objective evidence in the record "without explaining how the record was inconsistent" or "stating [the ALJ's] interpretation thereof" did not "provide the degree of specificity required" to reject the treating physician's opinion).

In Defendant's Opposition, Defendant cites to "objective evidence" the ALJ "referenced" that purportedly contradict Dr. Pendragon's opinion. Def.'s Mot. at 10-13. Defendant also argues the ALJ properly acted as a "final arbiter" in evaluating the medical opinions of the State's medical consultants—Dr. Spellman and Dr. Chan—and assigning these opinions "great weight" versus Dr. Pendragon's opinion. Id. at 14. However, the ALJ did not cite either this evidence or Dr. Spellman and Dr. Chan's opinions as the basis for his rejection of Dr. Pendragon's opinion and the Court does not accept such *post hoc* rationalizations. See Orn, 495 F.3d at 630 (courts review "only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which he did not rely.") (citation omitted).

Finally, to the extent the ALJ rejected Dr. Pendragon's opinions because of a "lack of objectivity," the ALJ failed to provide any evidence Dr. Pendragon acted improperly. Given the ALJ's lack of discussion regarding what factors led him to conclude that Dr. Pendragon's opinion was "sympathetic," this rationale does not meet the requisite level of specificity. See Lester v. Chater, 81 F.3d 821, 832 (9th Cir. 1995) ("The Secretary may not assume that doctors routinely lie in order to help their patients collect disability benefits.") (citation omitted); Crites v. Berryhill, No. CV 17-1336 JC, 2017 U.S. Dist. LEXIS 211176, at \*11 (C.D. Cal. Dec. 21, 2017) (ALJ's conclusory finding that the "functional limitations" indicated in treating physician's opinion "appear to be sympathetic rather than objective opinion" was "not a legitimate basis" for rejecting the physician's opinion).

///

///

12

**c.**      <u>Propriety of Assigning Dr. Pendragon's Opinion "No Weight"</u>

Finally, even if the ALJ had pointed to substantial evidence supporting his decision not to give Dr. Pendragon's opinion controlling weight, the ALJ failed to adequately explain why Dr. Pendragon's opinion deserved "no weight" at all.

In the event that the opinion of a treating physician is not entitled to "controlling weight," the ALJ is instructed by 20 C.F.R. § 404.1527(c)(2) to consider the factors listed in 20 C.F.R. § 404.1527(c)(2)-(6) to determine what weight to accord the opinion of the treating physician. The Ninth Circuit has held that a failure to do so "alone constitutes reversible legal error." <u>Trevizo</u>, 871 F.3d at 676; <u>see</u> <u>also</u> <u>Maurie Leroy L. v. Comm'r of Soc. Sec.</u>, No. 2:18-CV-00059-SMJ, 2018 U.S. Dist. LEXIS 216849, at *19-22 (E.D. Wash. Dec. 27, 2018) (ALJ erred by not considering factors set forth in 404.1527(c)(2)-(6)).

For the above reasons, the Court concludes the ALJ's assignment of "no weight" to Dr. Pendragon's opinion was legal error.

**III.**    <u>The ALJ's Treatment Of Dr. Cross's Opinion</u>

On October 24, 2015, Plaintiff met with Dr. Kara Cross for a consultative examination. AR at 661-67. Plaintiff reported "depression, anxiety, memory problems, irritability, fear, helplessness, stress, obsessive thoughts, panic, distrust of others, and a sleep disturbance." <u>Id.</u> at 663. <u>Id.</u> Dr. Cross observed Plaintiff to be "somewhat genuine and truthful" with some "evidence of exaggeration, but not manipulation." <u>Id.</u> Dr. Cross further reported that Plaintiff's "responses/testing appear somewhat valid." <u>Id.</u>

Plaintiff was diagnosed with dysthymic disorder and amphetamine dependence in remission. <u>Id.</u> at 665. Plaintiff's psychiatric condition was deemed "FAIR" by Dr. Cross with a GAF score of 69. <u>Id.</u> at 665-66. Plaintiff was further assessed to be: (1) "moderately limited" in her ability to "do detail[ed] and complex tasks over an 8 hour day 40 hour work week without emotionally decompensating"; and (2) not significantly limited in a simple setting, but moderately limited in a complex setting in her ability to "maintain regular attendance in the work place and perform activities on a consistent basis." <u>Id.</u> at 666.

In reaching his conclusion, the ALJ held:

> As for the opinion evidence, the medical opinion of State agency Dr. Grubbs (Exhibit 1A) indicating no severe mental impairment is fully credible and given great weight based upon supportability with medical documentation, consistency with the record and area of specialization (SSR 96-6p). Consultative examiner Dr. Cross reported GAF score of 69, which although a snapshot in time, is indicative of good mental functioning. The claimant reported she has seen a therapist but had never seen a psychologist or a psychiatrist, and she had never been psychiatrically hospitalized (Exhibit 6F). She was able to fully participate in the hearing and respond to questions in an appropriate manner.

Id. at 25.

On November 12, 2015, Dr. George Grubbs, the State agency's psychological consultant found that Plaintiff's "impairments" did not appear to be "severe" given the "available evidence. Id. at 139. Dr. Grubbs provided a short evaluation of Dr. Cross's opinion finding Dr. Cross's assessments were "not commensurate" with the medical records in Plaintiff's file. Id.

Plaintiff contends that the ALJ "failed to consider Dr. Cross' opinions that [Plaintiff] is moderately limited in the ability to perform complex and detailed work[.]" Pl.'s Mot. at 12. Plaintiff argues this error is not harmless because acceptance of Dr. Cross's opinions "would actually result in the conclusion that [Plaintiff] cannot perform her past relevant work, which is contrary to the agency's final determination." Id. Plaintiff argues the ALJ's reliance on the opinions of the state agency psychologist—Dr. Grubbs—is insufficient— as the "question here is whether the ALJ committed legal error in failing to articulate any reason for rejecting Dr. Cross' opinions[.]" Id.

In Response, Defendant "acknowledges that the ALJ did not assign any particular weight to [Dr. Cross's opinion] nor did he provide reasons for accepting or rejecting her opinion in a separate paragraph as he did for other opinions[.]" Def.'s Mot. at 16-17. Instead, Defendant submits "that the ALJ's evaluation of other medical opinions permit a

14

reasonable inference as to why the ALJ rejected Dr. Cross's opinions, and any error in not explicitly stating that he rejected the opinion was therefore harmless." Id. at 17. Specifically, Defendant notes the "great weight" that the ALJ gave to the opinion of Dr. Grubbs. Id. at 17-19.

It is well established that an ALJ may not silently reject an examining physician's opinion by simply making contrary findings. As the Ninth Circuit has held:

> [A]n ALJ errs when he rejects a medical opinion or assigns it little weight while doing nothing more than ignoring it, asserting without explanation that another medical opinion is more persuasive, or criticizing it with boilerplate language that fails to offer a substantive basis for his conclusion.

Garrison v. Colvin, 759 F.3d 995, 1012-13 (9th Cir. 2014).

Defendant cites to the Ninth Circuit's Magallanes v. Bowen, 881 F.2d 747 (9th Cir. 1989) decision to argue that the Court may reasonably infer that by "giv[ing] Dr. Grubbs' opinion 'great weight,' the ALJ effectively adopted the rejection of Dr. Cross's assessment of moderate limitations." Def.'s Mot. at 18. In Magallanes, the Ninth Circuit held a reviewing court may draw "specific and legitimate inferences" from which to conclude that an ALJ properly rejected a treating physician's opinions "if those inferences are there to be drawn." 881 F.2d at 755.

In Magallanes however, the Ninth Circuit found that the ALJ had summarized "the facts and conflicting medical evidence in detailed and thorough fashion" and addressed the specific issue of disagreement (date of onset). Id. at 755 ("The ALJ here summarized the facts and conflicting clinical evidence in detailed and thorough fashion, stating his interpretation and making findings."). This allowed the Magallanes Court to infer why the ALJ had rejected a treating physician's opinion even if the ALJ had neglected "to recite the magic words" that he was doing so. In contrast, here, the ALJ merely summarized Dr. Cross's opinion (AR at 21-22) and Dr. Grubbs' opinion (AR at 22) before assigning Dr.

15

Grubbs' opinion "great weight" (AR at 25).[1]

Defendant also cites to two unpublished Ninth Circuit decisions—Lenhart v. Astrue, 252 Fed. Appx. 787 (9th Cir. 2007) and Elmore v. Colvin, 617 Fed. Appx. 755 (9th Cir. July 10, 2015)—to argue that the Court should "look to the ALJ's decision in its entirety to determine whether the error was harmless." Pl.'s Reply at 7. The Court does not find these cases to be applicable to the instant one.

In Lenhart, the Ninth Circuit found an ALJ had not erred by failing to explain why he rejected a physician's opinion because that opinion was identical to another physician's opinion which the ALJ had rejected. 252 Fed. App'x at 789. For these reasons, the Court found it was "evident" that the ALJ had rejected both physicians' assessed limitations for the same reasons. Id.

Similarly, in Elmore, the Ninth Circuit found the ALJ had not erred by failing to reject the opinions of a number of medical providers because those opinions were incorporated into another physician's opinion which the ALJ had rejected. 617 F. App'x at 757-58. Thus, the Elmore Court could infer that the ALJ had rejected all of these opinions for the same reasons—because they were based largely on the claimant's "discredited self-complaints." Id. at 758.

In contrast to both of those cases, here, Dr. Grubbs and Dr. Cross's opinions were not consistent and the ALJ's acceptance of Dr. Grubbs' opinion and rejection of Dr. Cross's without explanation is still contrary to law. See Castro v. Astrue, No. 1:10-cv-01092-AWI-SKO, 2011 U.S. Dist. LEXIS 87705, at *24-25 (E.D. Cal. Aug. 8, 2011) (distinguishing Magallanes where ALJ provided no interpretation of treating physician's findings "or what portions of it conflicted with particular objective evidence."); Burkard v. Astrue, No. CV

---

[1] As for the ALJ's brief reference to the GAF score reported by Dr. Cross, the Ninth Circuit has noted that "GAF scores are typically assessed in controlled, clinical settings that may differ from work environments in important respects." Garrison v. Colvin, 759 F.3d 995, 1002 n.4 (9th Cir. 2014) (citation omitted). There is no indication the ALJ considered the limited relevance of Plaintiff's GAF score to the rest of Dr. Cross's opinion.

16

09-1073-PK, 2010 U.S. Dist. LEXIS 141070, at *62 (D. Or. Dec. 7, 2010) (adopted in Burkard v. Astrue, No. 09-1073-PK, 2011 U.S. Dist. LEXIS 11803, at *1 (D. Or. Feb. 7, 2011)) (distinguishing Magallanes where ALJ merely summarized treating counselor's opinion as well as opinions of two state psychologists without addressing specific issue of disagreement).

For the foregoing reasons, the Court finds the ALJ failed to properly evaluate Dr. Cross's opinion.

## IV.  Harmless Error

Having found that the ALJ erred, the Court must now consider whether the ALJ's errors are harmless. Error is harmless "where the mistake was nonprejudicial to the claimant or irrelevant to the ALJ's ultimate disability conclusion," Stout v. Comm'r, 454 F.3d 1050, 1055 (9th Cir. 2006), or where it is "clear from the record that 'the ALJ's error was inconsequential to the ultimate nondisability determination.'" Tommasetti, 533 F.3d at 1038 (citations omitted).

Here, the Court cannot confidently conclude that the ALJ's errors were neither prejudicial nor inconsequential to the ultimate disability determination. As the Ninth Circuit has held: "the decision on disability rests with the ALJ and the Commissioner of the Social Security Administration in the first instance, not with a district court." Marsh v. Colvin, 792 F.3d 1170, 1173 (9th Cir. 2015). Consequently, reversal is warranted. See id. (reversing finding of harmless error where ALJ did not reference treating physician's medical opinion and reviewing court could not "confidently conclude" that the error was harmless.).

## V.    Remedy

The only remaining question for the Court is whether to remand for further administrative proceedings or for payment of benefits.

"The decision of whether to remand a case for additional evidence, or simply to award benefits[,] is within the discretion of the court." Trevizo, 871 F.3d at 682 (quoting Sprague v. Bowen, 812 F.2d 1226, 1232 (9th Cir. 1987)). "Remand for further

17

administrative proceedings is appropriate if enhancement of the record would be useful." Benecke v. Barnhart, 379 F.3d 587, 593 (9th Cir. 2004).

The Ninth Circuit applies "a three-part credit-as-true standard, each part of which must be satisfied in order for a court to remand to an ALJ with instructions to calculate and award benefits[.]" Garrison, 759 F.3d at 1020. The standard is met where: "(1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand." Id. (footnote and citations omitted).

Even if all three requirements are met, the Court retains flexibility to remand for further proceedings "when the record as a whole creates serious doubt as to whether the claimant is, in fact, disabled within the meaning of the Social Security Act." Brown-Hunter v. Colvin, 806 F.3d 487, 495 (9th Cir. 2015). A remand for an immediate award of benefits is appropriate only in rare circumstances.

Here, based on the record before it, the Court cannot conclude the ALJ would be required to find the claimant disabled if the ALJ had properly credited Dr. Pendragon and Dr. Cross's opinions. Instead, the Court finds that further administrative proceeds would serve a meaningful purpose so that Dr. Pendragon and Dr. Cross's opinions may be properly evaluated. See Kinzer v. Colvin, 567 Fed. App'x 529, 530 (9th Cir. 2014) (finding the credit-as-true rule inapplicable and remanding a social security matter where the ALJ failed to properly reject the opinions of two treating physicians) (citations omitted).

Moreover, even if on remand the ALJ concludes that Plaintiff cannot perform her past relevant work, Plaintiff may nonetheless be denied benefits if she can perform other work available in significant numbers in the national economy at step five of the disability determination. 20 C.F.R. § 404.1520(g). Because the ALJ found that Plaintiff could perform her past relevant work at step four, the ALJ was not required to make a step five

18

finding and did not do so. As a result, remand would be appropriate to allow the Commissioner to consider step five, if necessary.

## **CONCLUSION**

For the reasons set forth above, the Court **RECOMMENDS** that Plaintiff's Motion for Summary Judgment be **GRANTED**, that Defendant's Cross-Motion for Summary Judgment be **DENIED**, and that judgment be entered **REVERSING** the decision of the Commissioner and **REMANDING** this matter for further administrative proceedings.

**IT IS HEREBY ORDERED** that any written objections to this Report and Recommendation must be filed with the Court and served on all parties on or before **December 13, 2019**. The document should be captioned "Objections to Report and Recommendation."

**IT IS FURTHER ORDERED** that any reply to the objections shall be filed with the Court and served on all Parties on or before **January 3, 2020**. The Parties are advised that failure to file objections within the specified time may waive the right to raise those objections on appeal of the Court's order. Turner v. Duncan, 158 F.3d 449, 455 (9th Cir. 1998); Martinez v. Ylst, 951 F.2d 1153, 1157 (9th Cir. 1991).

**IT IS SO ORDERED.**

Dated: November 22, 2019

_____
Honorable Linda Lopez
United States Magistrate Judge

19